IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:

PATRICIA LYNN HAMMER,             Case No. 11-12287-M
                                                                                Chapter 7
           Debtor.

**MEMORANDUM OPINION**

In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),[1] in part to curb various abuses of the United States Bankruptcy Code. One of the perceived abuses was that debtors who had the ability to pay a meaningful portion of their debts in a Chapter 13 plan were choosing not to do so. Congress believed that, in a glorious display of self-interest, those debtors were filing Chapter 7 cases, obtaining discharges, and pocketing money that would have gone to creditors in a Chapter 13 case. In order to prevent such abuse, BAPCPA contains a presumption: if a debtor has the ability to pay his or her unsecured creditors more than $11,725 under the terms of a Chapter 13 plan, allowing that debtor to proceed under Chapter 7 is presumed to be an abuse of the United States Bankruptcy Code. The presumption is rebuttable: if a debtor can show circumstances that prohibit meaningful repayment, the case may continue under Chapter 7. If the presumption is not rebutted, BAPCPA allows the Court to dismiss the case, or, with the consent of the debtor, convert it to a case under Chapter 13.[2]

In this case, the evidence establishes that this debtor has the ability to pay her unsecured

---

[1] Pub. L. No. 109-8, 119 Stat. 23 (2005).

[2] *See* 11 U.S.C. § 707(b). Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq*. (West 2011). The Court is aware that its description of § 707(b) is a bit of an oversimplification. The description is, however, adequate for the purposes of the introduction, and the details of § 707(b) will be fleshed out later in the opinion.

creditors far more than $11,725 under a Chapter 13 plan.  The debtor made no attempt to rebut the presumption of abuse.  Instead, the evidence presented focused upon her counsel and his alleged inability to properly complete basic bankruptcy pleadings and timely provide information to the office of the United States Trustee.  The Court has been asked not only to dismiss the case, but also to order counsel to disgorge his fee.  The Court has little difficulty with the first request.  The second and more difficult question, disgorgement of a fee, is a matter left to the Court's discretion.  The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52, which are made applicable to these contested matters by Bankruptcy Rule 9014.

## Jurisdiction

This Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.  Reference to the Court of these matters is proper pursuant to 28 U.S.C. § 157(a).   Both matters are core proceedings as defined by 28 U.S.C. § 157(b)(2)(A).

## Findings of Fact

On August 8, 2011, Patricia Lynn Hammer ("Debtor"), filed an original petition for relief under Chapter 7 of the Bankruptcy Code.  Karen Carden Walsh ("Walsh") was appointed to serve as the Chapter 7 trustee in Debtor's case.  Debtor is represented by Richard Ravits ("Ravits"), an attorney duly licensed to practice before this Court.  Debtor paid Ravits $1,000 as an attorney fee prior to the filing of the case.[3]   According to the records maintained by the Clerk of this Court, Ravits has acted as counsel in 422 bankruptcy cases filed in the Northern District of Oklahoma since

---

[3] *See Docket No. 1*, at 1.

March of 1987.[4] The vast majority of these cases are Chapter 7 cases.

Debtor's original petition indicates that her debts are primarily consumer debts.[5] Filed simultaneously with the petition is a Chapter 7 Statement of Current Monthly Income and Means-Test Calculation (Official Form B22A or the "Means Test" ) and Schedule I (Official Form B6I).[6] Both documents state that Debtor is married and her spouse is not joining her in the bankruptcy filing. Debtor makes no declaration that she is either legally separated or living separate and apart from her spouse.[7] Although clearly required in the instructions on each of these official forms, no information regarding income of Debtor's non-filing spouse is provided.[8] As filed, the information on the Means Test indicates, with Debtor's current monthly income of $2,581.75[9] and household size of 2 persons, that no presumption of abuse arises, that she is eligible to file a Chapter 7 case,

---

[4] This information is readily available on the Court's Case Management/Electronic Case Filing database (https://ecf.oknb.uscourts.gov). The Court takes judicial notice of this fact on its own motion.

[5] *Docket No. 1*, at 13.

[6] *See id.* at 5–12, 30.

[7] *See id.* at 6, Question 2(c) (verified under penalty of perjury, *Id.* at 12); *Id.* at 30, Debtor's marital status listed as "Married" (verified under penalty of perjury, *Id.* at 33).

[8] The instructions on Official Form B22A for completing Part II. Calculation of Monthly Income for § 707(b)(7) Exclusion for an individual selecting option 2(c) ("Married, not filing jointly, without the declaration of separate households set out in Line 2.b above.") state in bold type: **"Complete both Column A ("Debtor's Income") and Column B ("Spouse's Income") for Lines 3-11."** The instructions on Official Form B6I for completing Schedule I state in the first sentence: "The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed." *See also* § 707(b)(7).

[9] This number is identical to the gross monthly income reported on the form. *See Means Test, Docket No. 1*, at 6–7. The Court notes that Debtor's original Schedule I indicates that Debtor's gross monthly income is $3,198.00. *See Docket No. 1*, at 30.

and that her income is sufficiently low that she does not need to complete the remainder of Official Form B22A.

After a review of Debtor's petition, schedules, and statements filed in this case, Terry Coble ("Coble"), a representative of the Office of the United States Trustee ("UST"), contacted Ravits by email and informed him of several deficiencies and errors in Debtor's schedules and statements, including the failure to disclose Debtor's non-filing spouse's income on the Means Test and Schedule I.[10] On August 30, 2011, Ravits filed an Amended Schedule I,[11] Amended Schedule J,[12] and Amended Means Test.[13] These documents indicate that 1) Debtor has monthly gross income of $3,198.00; 2) her spouse has monthly gross income of $3,986.00; 3) her average monthly expenses have increased by $1,891; and 4) she is legally separated or living separate and apart from her spouse. The Amended Means Test shows Debtor has $1,552.00 in monthly disposable income, with no deductions made for a marital adjustment, payments on secured claims, or payments for the care of family members. No information regarding additional expenses borne by Debtor or other special circumstances is provided.

On August 31, 2011, Coble sent Ravits a second email outlining additional deficiencies and errors in the amended pleadings.[14] Among other deficiencies, Coble indicated that Ravits had used incorrect figures for 1) the applicable median income for a household of 2 in Oklahoma; 2) the local

---

[10] *Hearing Ex. 6-1.*

[11] *Hearing Ex. 7.*

[12] *Hearing Ex. 8.*

[13] *Hearing Ex. 9.*

[14] *Hearing Ex. 6-2.*

standard for non-mortgage expense; 3) the local standard for mortgage/rent expense; 4) the number of vehicles operated by the household (inconsistent with other schedules); 5) the local standard for transportation ownership expense; and 6) future payments on secured claims. In addition, an unamended attachment to Debtor's original Schedule I overstated deductions from Debtor's gross income (compared to the pay advices provided), resulting in an understatement of Debtor's net monthly income of $433.38 per month. Coble requested that Ravits either correct the deficiencies or provide additional documentation to support the contradictory information. Coble requested the information be provided prior to the upcoming § 341 meeting to be held in Debtor's case. Ravits did not respond to the request.

Coble attended Debtor's §341 meeting of creditors on September 6, 2011, and solicited answers to the many questions raised by the documents on file. Coble focused his inquiry on the incorrect numbers in the schedules and statements. Debtor stated that she had provided information to Ravits in the form of pay advices and other documentation. She was at a loss to explain why numbers were incorrectly calculated and reported on her schedules and means test forms. Debtor and Ravits left the meeting with a list of documentation to be provided to Coble and amendments to be filed in the case.

Ravits provided the requested documentation to Coble and filed a Second Amended Schedule I[15] and Second Amended Schedule J[16] on September 19, 2011. On September 28, 2011, Ravits filed a Second Amended Means Test.[17] Contrary to the Means Test, the Second Amended

---

[15] *Docket Nos. 13 and 17.*

[16] *Docket Nos. 15 and 18.*

[17] *Docket No. 21.* The Court notes that the pleading indicates that it was executed under penalty of perjury by Debtor on September 29, 2011, the day after it was filed in the Court's ECF

5

Means Test states that Debtor resides with her husband.[18] It also reports gross wages for both Debtor and her spouse that are inconsistent with the information provided on any version of Schedule I filed in the case. After application of the required means test calculations, the Second Amended Means Test indicates that Debtor's household has current monthly income of $6,934.02 and allowable expense deductions of $3,729.04. This results in monthly disposable income under § 707(b)(2) of $3,204.98, or 60-month disposable income of $192,298.80. This amount exceeds $11,725.00, resulting in a presumption that granting relief to Debtor would be an abuse of Chapter 7 of the Bankruptcy Code. No information is provided regarding special circumstances that might rebut the presumption of abuse.

*The Motion to Dismiss*

On October 13, 2011, the UST filed a Motion to Dismiss Case Pursuant to § 707(b) ("Motion to Dismiss").[19] The UST agrees that the debts at issue are primarily consumer debts, and, based upon the information contained in the Second Amended Means Test, argues that a presumption of abuse arises in Debtor's case. The UST also asserts that the Second Amended Means Test is "replete with significant errors as to income and allowable deduction,"[20] the effect of which is to understate Debtor's disposable income. The UST submitted an annotated copy of the Second Amended Means Test, which includes corrections made by Coble to show the proper

---

System.

[18] *Id.* at 2 (Question 2(c)). *See supra* p. 3. Nothing in the record convinces the Court that Debtor was *ever* separated from her husband.

[19] *Docket No. 22.*

[20] *Id.* at 2.

calculations, based on information available to him.[21] According to Coble's calculations, Debtor's household has current monthly income of $7,232.09 and allowable expense deductions of $5,577.14.[22] This results in monthly disposable income under § 707(b)(2) of $1,654.95, or 60-month disposable income of $99,297.00. Because this amount still exceeds $11,725.00, there is no change in the UST's conclusion that a presumption exists that granting relief to Debtor would be an abuse of Chapter 7 of the Bankruptcy Code. In addition, Coble calculated that if Debtor's Schedules I and J were correctly filled out, based on the information available to him, she would have $974.45 in monthly net income (Schedule J, line 20(c)).[23] At the hearing on this matter, this number was revised to $926.12, based on updated payment advices for Debtor's non-filing spouse.[24]

*The Fee Motion*

At some point during the discussion between the UST and Ravits regarding the various deficiencies and inaccuracies in the documents prepared by Ravits, the UST suggested that Ravits consider refunding his attorney fee to Debtor.[25] Ravits declined. The UST then filed a Motion to Examine Debtor's Transactions with Attorney and Determination of the Reasonableness of Fees Pursuant to 11 U.S.C. § 329 (the "Fee Motion").[26] The Fee Motion outlines the various deficiencies

---

[21] *Docket No. 22-1.*

[22] *Id.* at 8.

[23] *Docket No. 22-2*, at 2.

[24] *See Hearing Ex. 21.*

[25] *See Hearing Ex. 6-8.*

[26] *Docket No. 23.*

and places Ravits on notice that disgorgement of his fee is at issue.

*The Hearing*

A hearing on the Motion to Dismiss and the Fee Motion was held on November 30, 2011. At the hearing, Coble testified regarding the laborious process of working with Ravits. Coble testified that although Ravits ultimately supplied him with each of the various pieces of documentation that were requested, e.g., copies of bank statements, the spouse's pay advices, tax returns, Coble did not believe Ravits had a good working knowledge of the forms and schedules required to file a Chapter 7 case. As a result, Coble was required to expend significant time on this case in an attempt to solicit necessary information from Ravits and educate him on how to fill out the required forms. Despite this expenditure of time, Coble is not confident that Debtor's means test or schedules accurately reflect her financial reality.

Walsh testified regarding her experience in this case. At the meeting of creditors, in response to Walsh's inquiries, Debtor disclosed ownership of several pieces of personal property that were not listed on her bankruptcy schedules.[27] Walsh also noted that inaccuracies in the pleadings submitted by Ravits required the UST to devote an inordinate amount of time to this case. She expressed concern that Debtor's interests were not being properly represented. Although Ravits ultimately provided everything that she and the UST requested, Walsh was concerned that the corrected version of the means test prepared by Coble, while accurate given the information available, may not present a true picture of Debtor's financial condition. Walsh suggested that

---

[27] To date, no further amendments have been made to Debtor's schedules with respect to these items of property.

more experienced counsel might better represent Debtor's interests.[28] While she did not indicate whether that might remove the presumption of abuse in Debtor's case, Walsh felt it would go a long way towards providing a more accurate picture of Debtor's financial condition than is available to the parties and the Court at this time.

Debtor was less than satisfied with Ravits's representation. Prior to the filing date of her petition, Ravits informed her that she would not need to provide any information regarding her spouse's income or property because they were not filing a joint case.[29] Debtor testified that much of the advice she received from Ravits was in direct conflict with the positions taken by Walsh and Coble at her § 341 meeting. Debtor does not believe she received adequate representation from Ravits; nor does she believe that her household has over $900 in monthly disposable income, as calculated by Coble, to be applied toward a plan payment if her case were converted to one under Chapter 13. Debtor believes that her household does not have any disposable income that could be devoted to such a plan, and is unwilling to voluntarily convert her case from Chapter 7 to Chapter 13.

Other than cross-examination of Coble and Debtor, Ravits presented no evidence at the November 30, 2011, hearing.

In his closing argument, Ravits suggested that the two motions under consideration filed by the UST were a form of personal attack. Ravits stated that he has been representing debtors in

---

[28] The Court is aware that this testimony was difficult for Walsh, in that she felt the need to take a neutral position regarding the Motion to Dismiss. The Court thanks her for her candid remarks.

[29] *Transcript of November 30, 2011, Hearing*, Docket No. 38, at 35, 45. During his questioning of Debtor at the hearing, Ravits suggested that he may have told Debtor that information regarding her husband's income might be required later in the process. *Id.* at 45.

bankruptcy for 29 years, and that his representation of Debtor followed his standard procedure. He suggested that he may have made some mistakes regarding the failure to schedule Debtor's personal property and failure to include the non-filing spouse's income on Official Form B22A and Schedule I, but that those were simple oversights easily corrected with amendments. Ravits emphasized that he had done significant work to address all of the UST's concerns and to provide the requested information, and was therefore entitled to keep his fee.

To the extent the "Conclusions of Law" contain any items that should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

### Conclusion of Law

*Motion to Dismiss*

Section 707(b) sets out circumstances under which the Court may dismiss a case filed under Chapter 7 of the Bankruptcy Code or convert it to another chapter, as follows:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.[30]

The section also outlines the circumstances under which a presumption of abuse will be found to exist, as follows:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—
> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,025, whichever is greater; or

---

[30] § 707(b)(1).

(II) $11,725.[31]

Clauses (ii)–(iv) of § 707(b)(2)(A) lay out the calculations, commonly referred to as the "means test," that must be made to determine whether the presumption of abuse arises in a debtor's case. These calculations are made using Official Form B22A for an individual case filed under Chapter 7.[32] The Code requires that a married debtor must disclose his or her spouse's income, even when the case is not filed as a joint case, unless the debtor and spouse are legally separated or are living separate and apart for reasons other than to avoid making such disclosure.[33] Section 707(b)(2)(B) provides a mechanism for a debtor to provide evidence of special circumstances that may serve to rebut the presumption of abuse if it arises, either on Official Form B22A or at a proceeding under § 707(b)(2).[34] Such evidence must be documented and accompanied by a detailed explanation of the special circumstances that make such adjustment necessary and reasonable.[35]

There is little doubt that to grant Debtor relief in this case, on the facts presently before the Court, would be an abuse of Chapter 7 of the Bankruptcy Code. Under the uncontradicted analysis conducted by Coble on behalf of the UST, Debtor has in excess of $900 in monthly net income,[36] which when multiplied over the life of a plan greatly exceeds the threshold of $11,725.[37] The

---

[31] § 707(b)(2)(A)(i).

[32] *See* § 707(b)(2)(C); Fed. R. Bankr. P. 1007(b)(4) (requiring submission of information to conduct means test on Official Form).

[33] § 707(b)(7)(B)(i).

[34] § 707(b)(2)(B)(i).

[35] § 707(b)(2)(B)(ii).

[36] *Hearing Ex. 21.*

[37] *See* § 707(b)(2)(A)(i)(II).

record is devoid of any documentation of special circumstances that may serve to negate the presumption of abuse under § 707(b)(2). Although the Court is not required to dismiss every case where a presumption arises, nothing in the record suggests that this case should continue as a Chapter 7 case.

Debtor may be eligible to convert this case to one under Chapter 13. In the absence of Debtor's consent, the Court may not order such a conversion and will dismiss this case.[38] Before taking this step, the Court will allow the Debtor an opportunity to consult legal counsel and consider her options.

***The Fee Motion***

Section 329 of the Bankruptcy Code provides that:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
    (1) the estate, if the property transferred—
        (A) would have been property of the estate; or
        (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
    (2) the entity that made such payment.[39]

This section is implemented by Federal Rule of Bankruptcy Procedure 2017 (Examination of

---

[38] Because the Court finds that a presumption of abuse under § 707(b)(2)(A)(i) arises and is not rebutted, it will not consider the UST's alternative argument under § 707(b)(3).

[39] § 329(a–b).

Debtor's Transactions with Debtor's Attorney), which states:

> Payment or Transfer to Attorney Before Order for Relief. On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.[40]

Once a motion has been filed pursuant to § 329 and Rule 2017(a) raising the reasonableness of an attorney's fee, the attorney bears the burden of establishing that the fee is reasonable.[41]

In determining the reasonable value of the services provided by a debtor's attorney, courts in this Circuit apply a lodestar test with appropriate enhancements based on an evidentiary inquiry under the guidelines set forth in *Johnson v. Georgia Highway Express, Inc.*[42] These "*Johnson* factors," include: 1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the

---

[40] Fed. R. Bankr. P. 2017(a).

[41] *In re Geraci,* 138 F.3d 314, 318 (7th Cir. 1998). *See also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[42] 488 F.2d 714 (5th Cir. 1974) (*abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). *See In re MiniScribe Corp.*, 309 F.3d 1234, 1243–44 (10th Cir. 2002). *See also In re Permian Anchor Servs., Inc.*, 649 F.2d 763, 768 (10th Cir. 1981) (holding that *Johnson* factors should be applied to award of attorneys' fees in connection with bankruptcy proceedings); *Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enters., Inc.)*, 997 F.2d 1321, 1323 (10th Cir. 1993).

client; and (12) awards in similar cases.[43]  A lodestar analysis of the hours reasonably expended in the case multiplied by a reasonable hourly rate has been called "the centerpiece of attorney's fee awards."[44]  As the Supreme Court for the United States has noted:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.[45]

The Court will apply these principles to the present case.

The Fee Motion was filed on October 12, 2011, using this Court's procedure to provide notice and an opportunity for Ravits to respond.[46]  Ravits filed a response (ostensibly on behalf of Debtor), in which he suggested that the Fee Motion sought something akin to a sanction, and that Debtor would be unjustly enriched if he were required to disgorge his fee.[47]  Ravits did not address any of the *Johnson* factors or provide any information that would allow the Court to conduct a lodestar analysis of his fees.  At the November 30, 2011, hearing, Ravits presented no evidence in defense of the Fee Motion.  Other than general statements regarding the "considerable time and effort on this thing, this case," Ravits gave no information regarding the time spent in preparing

---

[43] 488 F2d. at 717–19.  These factors are almost identical to the factors considered in determining a reasonable attorney fee under the Oklahoma Rules of Professional Conduct, Okla. Stat. tit. 5 § Ch. 1, App. 3-A, Rule 1.5(a).

[44] *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (*citing Hensley*, 461 U.S. at 424).  *See also In re Lederman Enters. Inc.*, 997 F.2d at 1323.

[45] *Hensley*, 461 U.S. at 433.

[46] *Docket No. 23.  See* Bankr. N.D. Okla. LR 9013-1(B).

[47] *Docket No. 27.*

the original case and the many amendments or what his normal hourly rate is. The Court will not speculate on such matters. Based on this complete lack of information and Ravits's burden to produce same, the Court is unable to assign any value to his services. Because the Court concludes that Ravits's services were of no value to Debtor, the $1,000 paid by Debtor to Ravits shall be returned to the Debtor.[48]

Although the analysis could end here, Ravits's conduct merits further comment. Debtor's case appears to be unexceptional. A perusal of the original petition suggests a debtor who is married, not filing jointly, and seeking bankruptcy relief in order to discharge several thousand dollars in credit card debt. There is no question that the earnings of a non-filing spouse must be included on both Official Form B22A and Schedule I.[49] There is no doubt that both forms, in clear and express language, inform the person filling out the form that such information must be included.[50] Finally, there is no dispute that Ravits failed to properly complete the forms. Ravits blames his inexperience with cases involving a non-filing spouse. Inexperience does not explain his failure to read the instructions on the forms. If Debtor's means test and schedules had been properly filled out in the first instance, Debtor may have had more realistic expectations about the bankruptcy process, and could have made choices based on a rational evaluation of her financial options. Had Ravits understood the law, he might have given his client better advice.

Ravits is not a fresh, green attorney who is cutting his teeth on his first case; to the contrary, he reports that he has been assisting debtors in bankruptcy for 29 years. Through Coble, the UST

---

[48] *See* § 329(b)(2).

[49] § 707(b)(7)(B).

[50] *See* note 8 *supra*.

made several attempts to walk Ravits through the numerous mistakes on the forms and schedules, each time indicating what information would be required to correct the error. While he ultimately added the requested information to the forms, Ravits failed to make allowed deductions and adjustments that may be available to Debtor. In short, Ravits has yet to produce pleadings that give the parties or the Court a coherent picture of Debtor's financial condition.

The Court does not doubt that Ravits spent considerable time working on this case. Time spent does not necessarily equate to value provided. Debtor's case did not present particularly novel, difficult, or undesirable issues. The skill required to file this case is the minimum expected of any attorney filing cases under Chapters 7 or 13 of the Bankruptcy Code. Ravits presented no evidence or argument that his work in this case was substantial enough to preclude other employment. No evidence was presented that Debtor faced any emergency that required the case to be filed without a proper investigation of the circumstances of the case.

The Court concludes that the services provided by Ravits have been of no value to Debtor. Prior to filing this case, Ravits should have solicited enough information from Debtor to determine whether she was eligible for relief under Chapter 7, and if not, what her options would be under Chapter 13 of the Bankruptcy Code. Instead, he filed the case with inadequate and inaccurate information, using the rationale that, if someone asked questions, pleadings could always be amended.[51] This sent Debtor into a combative cycle with the UST, and ultimately resulted in the

---

[51] Such a practice is unacceptable. This Court has said, time and time again, that it will not allow the bankruptcy process to become a game of "catch me if you can" between debtor and a bankruptcy trustee, or a creditor. The Court is not suggesting that Ravits intentionally made mistakes when he filled out the various pleadings. What the Court is saying is that an attitude of "don't worry about whether a document is accurate because we can always fix it later if someone asks" will not be tolerated in this Court. Ever.

filing of the Motion to Dismiss.  Debtor, the UST, and the Court expect and deserve a higher level of performance from the attorneys who practice in this community.

Ravits suggests that if Debtor is allowed to convert her case to one under Chapter 13, that he would be willing to represent her in that effort.  There is one small problem: Debtor does not want Ravits to represent her ever again.  Debtor may be able to benefit from relief under the Bankruptcy Code.  She will not benefit from being forced to work with counsel in whom she has no confidence.  Debtor is encouraged to use the funds returned by Ravits to seek out new legal counsel.[52]

Ravits's conduct comes perilously close to warranting sanctions under § 707(b)(4), given that he admittedly filed the case with no understanding of how to deal with a non-filing spouse.  Even a cursory inquiry (i.e., reading the directions on the forms and schedules) would have alerted him that critical information was missing from his calculations.  However, the UST has not sought such relief, and the Court, after much reflection, declines to head down such a path on its own.  The Court strongly recommends that Ravits seek additional training in bankruptcy law, in the form of accredited continuing legal education, if he wishes to continue to practice before this Court.  Continued performance at the level demonstrated in this case will not be compensated.

## Conclusion

The United States Trustee has shown cause to grant the Motion to Dismiss.  However, the Debtor is eligible to convert her case to one under Chapter 13 of the Bankruptcy Code.  Debtor will be given until February 3, 2012, to seek conversion of her case.  If Debtor has not filed a motion

---

[52] Debtor may contact the Lawyer Referral Service of the Tulsa County Bar Association for assistance.

to convert within this time frame, the Court will enter a separate order dismissing this case.

The Fee Motion is granted. Ravits is ordered to disgorge the sum of One Thousand and no/100ths Dollars ($1,000.00) to Patricia Lynn Hammer, Debtor herein, on or before January 25, 2012, and to file a pleading verifying that the monies have been paid as ordered within the same time frame. If the monies are not paid as ordered, the Court will issue an order requiring Ravits to show cause why further sanctions, including but not limited to a restriction upon his ability to practice before this Court, should not be imposed.

A separate judgment in accordance with this Memorandum Opinion is entered concurrently herewith.

Dated this 19th day of January, 2012.

BY THE COURT:

_____
TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

6261.5